IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CANDACE JULIAN, o/b/o C.G., )
)
        Plaintiff, )
)
    vs. ) Civil Action No. 13-107-J
)
CAROLYN W. COLVIN, )
ACTING COMMISSIONER OF SOCIAL )
SECURITY, )
)
        Defendant. )

O R D E R

      AND NOW, this 30th day of September, 2014, upon consideration of Defendant's Motion for Summary Judgment (Doc. No. 17) filed in the above-captioned matter on November 12, 2013,

      IT IS HEREBY ORDERED that said Motion is DENIED.

      AND, further, upon consideration of Plaintiff's Motion for Summary Judgment (Doc. No. 12) filed in the above-captioned matter on September 12, 2013,

      IT IS HEREBY ORDERED that said Motion is GRANTED IN PART and DENIED IN PART.  Specifically, Plaintiff's Motion is granted to the extent that it seeks a remand to the Commissioner of Social Security ("Commissioner") for further evaluation as set forth below and is denied in all other respects.  Accordingly, this matter is hereby remanded to the Commissioner for further evaluation under sentence four of 42 U.S.C. § 405(g) in light of this Order.

1

I.   **Background**

On August 20, 2010, Plaintiff Candace Julian filed a claim for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f, on behalf of her minor son, "C.G." Plaintiff claimed that C.G. became disabled on February 1, 2006, due to severe Attention Deficit Hyperactivity Disorder ("ADHD"). (R. 45, 77).

After being denied initially on December 30, 2010, Plaintiff sought and obtained a hearing before an Administrative Law Judge ("ALJ") on December 29, 2011.  (R. 52, 304).  In a decision dated January 24, 2012, the ALJ denied Plaintiff's request for benefits.  (R. 18-31).  The Appeals Council declined to review the ALJ's decision on March 22, 2013.  (R. 4-6).  Plaintiff filed a timely appeal with this Court, and the parties have filed cross-motions for summary judgment.

II.   **Standard of Review**

Judicial review of a social security case is based upon the pleadings and the transcript of the record.  See 42 U.S.C. § 405(g). The scope of review is limited to determining whether the Commissioner applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support the Commissioner's findings of fact.  See Matthews v. Apfel, 239 F.3d 589, 592 (3d Cir. 2001) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive") (quoting 42 U.S.C. § 405(g)); Schaudeck v. Comm'r of Soc. Sec., 181 F.3d 429, 431 (3d Cir. 1999) (noting that the court has plenary review of all legal issues, and reviews the administrative law judge's findings of fact to determine whether they are supported by substantial evidence).

"Substantial evidence" is defined as "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate" to support a conclusion.  Plummer v.

Apfel, 186 F.3d 422, 427 (3d Cir. 1999). However, a "single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence." Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983)). "Nor is evidence substantial if it is overwhelmed by other evidence – particularly certain types of evidence (e.g., that offered by treating physicians) – or if it really constitutes not evidence but mere conclusion." Id. at 317. A disability is established when the claimant can demonstrate some medically determinable basis for an impairment that prevents him or her from engaging in any substantial gainful activity for a statutory twelve-month period. See Fargnoli v. Massanari, 247 F.3d 34, 38-39 (3d Cir. 2001). "A claimant is considered unable to engage in any substantial gainful activity 'only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy ....'" Id. at 39 (quoting 42 U.S.C. § 423(d)(2)(A)) (emphasis in original).

The Social Security Administration ("SSA") has promulgated regulations incorporating a three-step sequential evaluation process for determining whether an individual under the age of 18 is disabled as defined by the Act. See 20 C.F.R. § 416.924(a). At Step One, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity. See 20 C.F.R. § 416.924(a). If so, the disability claim will be denied. See id. If not, Step Two of the process requires the Commissioner to determine whether the claimant is suffering from a severe impairment. See id. In this context, a medically determinable impairment or combination of impairments is not severe if it is a slight abnormality or a combination of slight abnormalities that cause no more than minimal functional limitations.

See 20 C.F.R. § 416.924(c). If the claimant fails to show that his or her impairments or combination of impairments are "severe," he or she is ineligible for disability benefits. If the claimant does have a severe impairment, however, the Commissioner must proceed to Step Three and determine whether the claimant's impairment or combination of impairments meets, medically equals, or functionally equals the criteria for a listed impairment. See 20 C.F.R. § 416.924(a). "An impairment(s) causes marked and severe functional limitations if it meets or medically equals the severity of a set of criteria for an impairment in the listings, or if it functionally equals the listings." 20 C.F.R. § 416.924(d). In determining whether an impairment or combination of impairments functionally equals the listings, an ALJ must assess the claimant's functioning in six different domains. See 20 C.F.R. § 416.926a(b)(1). If the claimant has an impairment or combination of impairments that meets, medically equals the severity of, or functionally equals the listings, and the impairment(s) has lasted or is expected to last for a continuous period of at least 12 months, he or she is presumed disabled. Id. If the impairment(s) does not meet the duration requirement, or does not meet, medically equal, or functionally equal the listings, then the claimant is not disabled. Id.

### III.     The ALJ's Decision

In the present case, the ALJ found that C.G. was a school-age child on August 20, 2010, the protective filing date. (R. 21). The ALJ then proceeded to apply the sequential evaluation process when reviewing the claim for benefits. In particular, the ALJ found that C.G. had not been engaged in substantial gainful activity since the alleged onset of disability. (R. 21). The ALJ also found that C.G. had the following severe impairments: an attention deficit hyperactivity disorder, combined type, a reading disorder, a developmental coordination disorder NOS and primary insomnia. (Id.).

At Step Three, the ALJ concluded that C.G.'s impairments, singly or in combination, did not meet or medically equal any of the listings in 20 C.F.R. Part 404, Subpart P, Appendix I. (Id. at 21). After assessing C.G.'s degree of limitation in each of the six functional equivalence domains, the ALJ concluded that C.G.'s impairments did not functionally equal the severity of the listings. (R. 22). Specifically, the ALJ found that C.G. had: (i) less than marked limitation in acquiring and using information; (ii) less than marked limitation in attending and completing tasks; (iii) less than marked limitation in interacting and relating with others; (iv) less than marked limitation in moving about and manipulating objects; (v) less than marked limitation in the ability to care for himself; and (vi) no limitation in health and physical well-being. (R. 22-29). The ALJ found C.G. not disabled after determining that he failed to demonstrate that his impairments resulted in either "marked limitations in two domains of functioning or "extreme" limitation in one domain of functioning. (R. 29).

## IV.   Legal Analysis

Plaintiff argues that remand is warranted in this case because the ALJ: (i) failed to explain adequately his finding that C.G.'s impairments did not meet or medically equal a listing; (ii) erred in determining that C.G.'s impairments did not functionally equal a listing; and (iii) failed to evaluate properly witness testimony and credibility. Defendant asserts that substantial evidence supports the ALJ's determination that C.G. was not disabled.

After careful review of the record, the Court finds that remand is warranted in this case because the ALJ failed to discharge his duty of addressing all the relevant, probative evidence in the record. Specifically, the ALJ failed to acknowledge the existence of an occupational therapy evaluation from Easter Seals Disability Services which contained information that conflicted

5

with some of his findings. Accordingly, the Court will remand the case for further consideration consistent with this Order.

It is well established that an ALJ has a duty to address relevant, probative evidence in the record, particularly where that evidence conflicts the ALJ's findings. See Cotter v. Harris, 642 F.2d 700, 704-06 (3d Cir. 1981) (recognizing that "there is a particularly acute need" for some explanation by the ALJ when he has "rejected relevant evidence" or when there is "conflicting probative evidence in the record"); see also Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000) (the ALJ "must give some indication of the evidence which he rejects and his reason(s) for discounting such evidence"); Benton for Benton v. Bowen, 820 F.2d 85, 88 (3d Cir.1987) ("Where the [ALJ] is faced with conflicting evidence, he must adequately explain in the record his reasons for rejecting or discrediting competent evidence.").

Although the ALJ has "statutory authority to choose [which evidence] to credit" among conflicting evidence, "the ALJ cannot reject evidence for no reason or the wrong reason." Mason v. Shalala, 994 F.2d 1058, 1066 (3d Cir. 1993) (quotation and citation omitted). Ultimately, the ALJ "may properly accept some parts of the medical evidence and reject other parts, but ... must consider all the evidence and give some reason for discounting the evidence [the ALJ] rejects." Adorno v. Shalala, 40 F.3d 43, 48 (3d Cir. 1994). An ALJ's failure to explain why he discounted or rejected relevant, probative evidence in the record precludes the ability to conduct meaningful judicial review, as the "reviewing court cannot tell if significant probative evidence was not credited or simply ignored." Cotter, 642 F.2d at 705.

Here, the Court cannot overlook the ALJ's failure to discuss the occupational therapy evaluation because it constituted relevant, probative evidence relating to C.G's motor disorder. As noted, the ALJ found that C.G's coordination disorder was a severe impairment but found

6

that his impairments, singly and in combination, did not functionally equal a listing. In making the functional equivalence determination, the ALJ repeatedly relied on a May 2010 physical examination conducted by Dr. Aslam Azad to conclude that C.G. had normal strength and coordination and completely failed to acknowledge the occupational therapy evaluation which showed that C.G. had limitations in those areas, among others. See (R. 21, 23, 27, 30, 246).

Indeed, according to the January 11, 2011 evaluation prepared by occupational therapist Melanie Ligas, C.G. was diagnosed with Developmental Coordination disorder and "Add of Childhood with Hyperactivit." (R. 246). Among other things, the report discusses the results of the Beery-Buktenica Development Test of Visual Motor Integration ("Beery VMI") which showed that C.G. received low scores in the majority of the areas tested.[1] (R. 247). For example, although C.G. was nine years old at the time of the evaluation, he scored: "very low" in motor coordination, with an age equivalence of a four year old; "low" in visual perception, with an age equivalence of a six and a half year old; and "below average" on the "Beery VMI", with the age equivalence of a six and a half year old. (R. 247). The report also documents that C.G. performed well below the age norm on his grip and pinch strength tests. (R. 248).

Thus, although the occupational therapy report constituted relevant and probative medical evidence, the ALJ carried on his discussion of the evidence as if that report did not exist in the record. Consequently, the Court is left wondering whether the ALJ considered the report or ignored it altogether. The Court finds that the ALJ's failure to address the report is not harmless,

---

[1] The "Beery VMI" is

> "a standardized test that is designed to access the extent to which an individual, age 2-18 years old, can integrate visual and motor abilities. The VMI test is composed of a developmental sequence of geometric forms to be imitated or copied using paper and pencil. There are two supplemental, standardized subtests, Visual Perception and Motor Coordination, that may be given as a means of statistically assessing visual and motor contributions to Beery VMI performance."

(R. 247).

because the report showed that C.G. performed well below average in a number of different areas and it could have supported Plaintiff's claim for disability. Accordingly, the Court cannot exercise meaningful judicial review and remand is necessary in order to provide the ALJ with an opportunity to explicitly discuss all the relevant, probative evidence in the record and explain the impact that the report has on his determination.

**V.     Conclusion**

In short, substantial evidence does not support the ALJ's determination of non-disability in this case because the ALJ failed to address the occupational therapy report, which constituted relevant, probative evidence. Accordingly, the Court hereby remands this case to the Commissioner for reconsideration consistent with this Order.

s/Alan N. Bloch<br>
United States District Judge

ecf: Counsel of Record